Norwood v Simon Prop. Group, Inc. (2021 NY Slip Op 07006)





Norwood v Simon Prop. Group, Inc.


2021 NY Slip Op 07006


Decided on December 15, 2021


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 15, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

CHERYL E. CHAMBERS, J.P.
FRANCESCA E. CONNOLLY
JOSEPH A. ZAYAS
DEBORAH A. DOWLING, JJ.


2017-11874
 (Index No. 5155/12)

[*1]Victor Norwood, appellant, 
v
Simon Property Group, Inc., et al., respondents, et al., defendant.


Frederick K. Brewington (Bergstein & Ullrich, LLP, New Paltz, NY [Stephen Bergstein], of counsel), for appellant.
Goldberg Segalla LLP, Garden City, NY (Brendan T. Fitzpatrick and Emilio F. Grillo of counsel), for respondents.



DECISION & ORDER
In an action to recover damages for personal injuries, the plaintiff appeals from an order of the Supreme Court, Nassau County (Roy S. Mahon, J.) entered September 28, 2017. The order, insofar as appealed from, granted that branch of the motion of the defendants Simon Property Group, Inc., AMC Entertainment, Inc., and AMC Lowes Roosevelt Field 8 which was for summary judgment dismissing the complaint insofar as asserted against them.
ORDERED that the order is modified, on the law, by deleting the provision thereof granting those branches of the motion of the defendants Simon Property Group, Inc., AMC Entertainment, Inc., and AMC Lowes Roosevelt Field 8 which were for summary judgment dismissing the cause of action alleging vicarious liability insofar as asserted against the defendants AMC Entertainment, Inc., and AMC Lowes Roosevelt Field 8, and substituting therefor a provision denying those branches of the motion; as so modified, the order is affirmed insofar as appealed from, without costs or disbursements.
On the evening of April 23, 2011, the plaintiff, along with several friends, went to the AMC Lowes Roosevelt Field 8 movie theater at the Roosevelt Field Mall located in Garden City. According to the defendant Eric C. Adams, one of the theater managers who was working that evening, the group was "causing a ruckus" near the theater entrance before they came inside. Some group members were "hitting" the glass entrance doors. Roosevelt Field Mall security guards were notified; they instructed the group to buy tickets to a movie or leave.
The group members purchased their tickets and were waiting in line at the concession stand in the theater lobby when a verbal dispute began between the plaintiff and Adams regarding something the plaintiff said about a concession stand worker. Adams asked the plaintiff to leave the theater. A male security guard was with Adams during this time.
As the incident escalated, one of the plaintiff's friends began to "get aggressive" with Adams; he told Adams to "get out of here" and "mind [his] business." Adams then removed a collapsible baton from one of his pants pockets and extended it. He kept the baton by his side; he did not swing it or otherwise use it to make contact with the plaintiff or any of his friends. The [*2]plaintiff, upon noticing the baton, laughed at Adams. According to Adams, the plaintiff also said that he "[had] something for [Adams] in the car." Adams walked away. The incident, to that point, had lasted approximately a minute.
The plaintiff and his friends asked for, and were given, refunds for their tickets. They left the theater, stopping on the sidewalk just outside the entrance.
When the plaintiff and his friends left the theater, Adams walked out of the theater and went to his vehicle. Adams retrieved an airsoft pistol (a pellet gun), which was attached to a "utility belt," and then returned to the sidewalk area in front of the theater where the plaintiff and his friends had congregated. When asked during his deposition why he returned to the front of the theater, Adams stated, "I'm the manager, and I can't leave." He also indicated that he believed that the plaintiff might have gone to his own vehicle to retrieve a weapon.
There, the altercation between the plaintiff and Adams resumed. The accounts of what happened next differ. The plaintiff testified that Adams pointed the pellet gun at him. Adams denied doing so. In either case, the plaintiff and his friends scattered, running in different directions. A security guard told Adams to go back inside the theater. Adams complied and was subsequently arrested.
The plaintiff commenced this action against Simon Property Group, Inc. (hereinafter Simon), AMC Entertainment, Inc., and AMC Lowes Roosevelt Field 8 (hereinafter together the AMC defendants, and collectively with Simon, the defendants), and Adams alleging causes of action sounding in intentional infliction of emotional distress, assault and battery, vicarious liability, negligent hiring, training, and supervision, and negligence, among other things. After the completion of discovery, the defendants moved, inter alia, for summary judgment dismissing the complaint insofar as asserted against them. In an order entered September 28, 2017, the Supreme Court, among other things, granted that branch of the defendants' motion. The plaintiff appeals.
"[T]he doctrine of respondeat superior renders a master vicariously liable for a tort committed by his servant while acting within the scope of his employment" (Riviello v Waldron, 47 NY2d 297, 302). The applicability of this theory of liability turns on a determination of "whether the act was done while the servant was doing his master's work, no matter how irregularly, or with what disregard of instructions" (id. at 302 [internal quotation marks omitted]). Put another way, an employer is not "necessarily excused [from vicarious liability] merely because his employees, acting in furtherance of his interests, exhibit human failings and perform negligently or otherwise than in an authorized manner" (id.). On the other hand, an employer "cannot be held vicariously liable for its employee's alleged tortious conduct if the employee was acting solely for personal motives unrelated to the furtherance of the employer's business" (Zwibel v Midway Auto. Group, 127 AD3d 965, 966 [internal quotation marks omitted]). Drawing this distinction "may appear . . . simple but, because it depends largely on the facts and circumstances peculiar to each case, it is more simply said than applied" (Riviello v Waldron, 47 NY2d at 302). Indeed, "because the determination of whether a particular act was within the scope of the servant's employment is so heavily dependent on factual considerations, the question is ordinarily one for the jury" (id. at 303).
As an initial matter, the defendants established, prima facie, that Adams was not employed by Simon, and was employed, instead, by the AMC defendants. Since the plaintiff failed to raise a triable issue of fact on this point, the Supreme Court properly granted that branch of the defendants' motion which was for summary judgment dismissing the vicarious liability cause of action insofar as asserted against Simon (see Rodriguez v Judge, 132 AD3d 966, 968).
We reach the opposite conclusion, however, with respect to the AMC defendants. In support of their motion, the defendants submitted, among other things, a copy of the "AMC Theatres Manager Handbook," which, in relevant part, prohibits managers from "[p]ossessing, brandishing, or using a weapon while on AMC premises or while engaged in AMC business." The Handbook, however, also includes a "Guest Service Protocol" section, which states that, if guests are "disruptive or potentially violent," managers "may need to have them escorted off of the [*3]property," as part of their "obligation to protect . . . guests, associates [and themselves]." Consistent with this expectation, the general manager of the theater, Adams's supervisor, stated, during his deposition, that managers, like Adams, have security-related responsibilities, including ensuring that the theater is safe for customers and dealing with unruly patrons. And the plaintiff, during his deposition, stated that he believed Adams was a security guard.
When a business employs security guards or bouncers to maintain order, the use of physical force may be within the scope of their employment (see Fauntleroy v EMM Group Holdings LLC, 133 AD3d 452, 453). Adams did not hold either of these job titles, but his responsibilities included maintaining order at the theater, ensuring the safety of customers and staff, and, if necessary, facilitating the removal from the theater of "disruptive or potentially violent" customers. The accomplishment of these ends by means prohibited by the AMC defendants' policy was not necessarily unforeseeable. After all, an employee's "disregard of instructions" (Riviello v Waldron, 47 NY2d at 302 [internal quotation marks omitted]) is an almost inevitable feature of vicarious liability claims involving intentional torts. Moreover, "specifically instruct[ing]" (Jaccarino v Supermarkets Gen. Corp., 252 AD2d 572, 572) employees "to refrain from [certain kinds of behavior when dealing] with customers does not compel [the] conclusion that, as a matter of law," the prohibited conduct is outside the scope of employment (id. at 572; see also Porcelli v Key Food Stores Co-Op., Inc., 44 AD3d 1020, 1022). Unquestionably, Adams's response to the plaintiff and his friends was "in poor judgment" (Ramos v Jake Realty Co., 21 AD3d 744, 746) and contrary to the AMC defendants' policy, but "this in itself does not absolve [the AMC] defendants of liability for his acts" (id. at 746).
Contrary to the defendants' contention, they failed to establish, as a matter of law, that Adams's conduct was motivated solely by the desire to respond to a perceived slight from the plaintiff and his friends. A jury could perhaps conclude that Adams's actions towards the plaintiff were so motivated, but it could also find that he acted primarily with his employer's interests in mind, by ensuring that a group of individuals that he perceived as unruly, and perhaps even violent, left the theater before they engaged in more serious misconduct (see id.).
On this point, "it bears noting that for an employee to be regarded as acting within the scope of his employment, the employer need not have foreseen the precise act or the exact manner of the injury as long as the general type of conduct may have been reasonably expected" (Riviello v Waldron, 47 NY2d at 304). Thus, the vicarious liability determination here does not turn on whether Adams's employer could have specifically anticipated that Adams might employ a baton that he happened to have in his pocket or a pellet gun that he had in his vehicle in an attempt to escort patrons off the premises, but rather, whether "the general type of conduct" (id.)—menacing, in essence—was reasonably foreseeable given the nature of Adams's responsibilities. A jury could determine that it was.
Accordingly, the defendants failed to demonstrate their prima facie entitlement to judgment as a matter of law dismissing the vicarious liability cause of action insofar as asserted against the AMC defendants (see Alvarez v Prospect Hosp., 68 NY2d 320, 324). Therefore, those branches of the defendants' motion which were for summary judgment dismissing the cause of action alleging vicarious liability insofar as asserted against AMC defendants should have been denied without considering the sufficiency of the plaintiff's opposing papers (id.).
The plaintiff's remaining contentions either are without merit or need not be reached in light of our determination.
CHAMBERS, J.P., CONNOLLY, ZAYAS and DOWLING, JJ., concur.
ENTER:
Maria T. Fasulo
Clerk of the Court